IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION


**GLORIA J. U.,** [1]

          Plaintiff,                       Civ. No. 6:18-cv-01170-CL

      v.                                  **OPINION AND ORDER**

**COMMISSIONER OF SOCIAL SECURITY,**

          Defendant.

_____

MARK D. CLARKE, Magistrate Judge.

      Plaintiff Gloria J. U. ("Plaintiff") seeks judicial review of the final decision of the

Commissioner of the Social Security Administration denying her claim for supplemental security

income (SSI) benefits under Title XVI of the Social Security Act.  For the reasons provided

below, the Commissioner's decision is AFFIRMED.[2]

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case.
[2] The parties have consented to Magistrate Judge jurisdiction over this action pursuant to 28 U.S.C. § 636(c)(1).

## BACKGROUND

Plaintiff was born October 18, 1964. Tr. 197. Plaintiff dropped out of school after the 10th grade. Tr. 221. She attended community college later in life in an attempt to obtain her GED, but was unsuccessful. Tr. 738. Plaintiff was married for 27 years and has four children. Tr. 738. When her children were younger, Plaintiff was a stay-at-home parent. During the fifteen years prior to her application for benefits, her only employment was in 2007-2008, when she worked in a compact disc manufacturing facility through a temporary agency. Tr. 205. She explained in her application for benefits that she stopped working at this position "[d]ue to her conditions." Tr. 220. Plaintiff was diagnosed with genotype 1A hepatitis C in 1997. Tr. 404. She was diagnosed with pancreatitis in 2008. Tr. 404. A liver biopsy performed in October 2011 disclosed chronic hepatitis C with moderate to severe activity and early cirrhosis. Tr. 406.

Plaintiff has a history of alcohol and opiate addiction. Tr. 739. Her excessive alcohol use was largely confined to her teenage years. Tr. 41. She was introduced to heroin by her husband and used heroin for approximately a year and a half while in her thirties. Tr. 40, 478, 739. She has been on daily methadone treatment since 1997 (Tr. 404, 739) and undergoes weekly alcohol and drug testing. Tr. 70. She attends weekly counseling sessions in conjunction with her methadone therapy. Tr. 68.

Plaintiff applied for SSI benefits in 2014. Tr. 197-200. She alleged disability beginning January 1, 2009. Tr. 197. Her claim was denied initially in and upon reconsideration. Tr. 109, 117. Plaintiff timely filed a request for hearing on February 3, 2015. Tr. 120. A hearing was held before ALJ Rauenzahn on November 2, 2016, in Eugene, Oregon. Tr. 56. Plaintiff appeared and testified at the hearing and was represented by an attorney. According to Plaintiff, the ALJ determined it was necessary to continue the hearing at a later date in order to allow for a

consultative neuropsychological evaluation to be performed in the interim.  Tr. 77.  However, according to the ALJ's opinion, the hearing was continued because the vocation expert ("VE") was not prepared to testify.  Tr. 13.

The ALJ reconvened the hearing on May 31, 2017.  Tr. 33.  Plaintiff provided additional testimony at the hearing. An independent VE also testified at the reconvened hearing.  The ALJ issued her decision denying Plaintiff's claim for SSI benefits on June 15, 2017.  Tr. 13-32.  The Appeals Council denied Plaintiff's request for review.  Tr. 1-6.  As a result, the ALJ's decision became the final decision of the Commissioner.  Plaintiff now appeals that final decision.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).  "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r. Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011).  Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The five-step sequential process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity"? 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities.

20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.    Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds to the "residual functional capacity" ("RFC") assessment.

     a.    The ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's RFC. This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954-55 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 954. The

Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the

Commissioner must show that the claimant can perform other work that exists in significant

numbers in the national economy, "taking into consideration the claimant's residual functional

capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir.

1999) (internal citations omitted); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work

which exists in the national economy"). If the Commissioner fails to meet this burden, the

claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the

Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 954-55;

*Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

Applying the five-step analysis, the ALJ made the following findings:

1.  Plaintiff has not engaged in substantial gainful activity since the application date. Tr.
    15.

2.  Plaintiff has the following severe impairments: hepatitis C; cirrhosis; cervical
    degenerative disc disease; depression; posttraumatic stress disorder (PTSD); opiate
    dependency and alcoholism in remission; mild neurocognitive disorder; anxiety
    disorder, not otherwise specified; and chronic headaches v. migraines. Tr. 15.

3.  Plaintiff does not have an impairment or combination of impairments that meets or
    medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404,
    Subpart P, Appendix 1. Tr. 16.

4.  Plaintiff has the RFC to perform a reduced range of light work. She can lift, carry,
    push, and pull 20 pounds occasionally and 10 pounds frequently. She can stand
    and/or walk for about 6 hours in an 8-hour workday, and she can sit for 6 hours in an
    8-hour workday. She can occasionally climb ramps and stairs, and she can never
    climb ladders, ropes, or scaffolds. She can never balance without support. She can
    occasionally crawl, stoop, and crouch. She can occasionally overhead reach
    bilaterally. She can understand, remember, and carry out simple, routine, and
    repetitive instructions that can be learned in 30 days or less. She can have occasional
    public contact but cannot work directly with the public. She can have occasional
    supervisor contact and occasional direct coworker interaction with no group tasks.
    She cannot perform math skills greater than GED reasoning level 2. She is limited to
    occasional changes in work setting and work duties. She cannot perform conveyor
    belt paced work. She can have no exposure to moving mechanical parts and

unprotected height hazards as defined by the Dictionary of Occupational Titles (DOT).  Tr. 18-19.

5.  Plaintiff is unable to perform any past relevant work.  Tr. 26.

6.  Transferability of job skills is not an issue in this case because Plaintiff's past relevant work is unskilled. Tr. 26.

7.  Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform (laundry sorter, small products assembler, and marker/tagger).  Tr. 26-27.

Consequently, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act since April 8, 2014, the date the application was filed.  Tr. 27.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the legal findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).  "'Substantial evidence' means 'more than a mere scintilla but less than a preponderance,' or more clearly stated, 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).  In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).  Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Where the evidence before the ALJ is subject to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Batson*, 359 F.3d at 1198 (citing *Andrews*, 53 F.3d

at 1041).  "However, a reviewing court must consider the entire record as a whole and may not

affirm simply by isolating a 'specific quantum of supporting evidence.'"  *Robbins v. Soc. Sec.

Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock*, 879 F.2d at 501).  Additionally, a

reviewing court "cannot affirm the [Commissioner's] decision on a ground that the

[Administration] did not invoke in making its decision."  *Stout v. Comm'r Soc. Sec. Admin.*, 454

F.3d 1050, 1054 (9th Cir. 2006) (citations omitted).  Finally, a court may not reverse an ALJ's

decision on account of an error that is harmless.  *Id.* at 1055-56.  "[T]he burden of showing that

an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki

v. Sanders*, 556 U.S. 396, 409 (2009).

Even where findings are supported by substantial evidence, "the decision should be set

aside if the proper legal standards were not applied in weighing the evidence and making the

decision."  *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968).  Under sentence four of 42

U.S.C. § 405(g), the reviewing court has the power to enter, upon the pleadings and transcript

record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or

without remanding the case for a rehearing.

## DISCUSSION

Plaintiff presents the following issues for review: (1) whether the ALJ provided sufficient

reasons to discount Plaintiff's subjective symptom testimony; and (2) whether remand for the

immediate calculation and award of benefits is warranted.  The Court finds the ALJ gave legally

sufficient reasons for discounting Plaintiff's symptom testimony and any error in misstating the

record was harmless. The ALJ's overall conclusion of no disability is clearly explained and

supported by substantial evidence.

> **I.      The ALJ provided clear and convincing reasons supported by substantial
> evidence for discounting Plaintiff's subjective symptom complaints.**

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptom. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. *Id*.

In the second stage of the analysis, the ALJ must consider the intensity, persistence, and limiting effects of the alleged symptoms based on the entire record. SSR 16-3p at *7-8. The ALJ will consider the "[l]ocation, duration, frequency, and intensity of pain or other symptoms" reported by the claimant, any medical sources, and any non-medical sources. *Id*. The ALJ's decision must contain "specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id*. Additionally, the evidence upon which the ALJ relies must be substantial. *See Reddick*, 157 F.3d at 724; *Holohan v. Massinari*, 246 F.3d 1195, 1208 (9th Cir. 2001); *Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991). The ALJ must also "state specifically which symptom testimony" is being rejected and what facts lead to that conclusion. *Smolen v. Charter*, 80 F.3d 1273, 1284 (9th Cir. 2009) (citing *Dodrill*, 12 F.3d at 918). In rejecting claimant's testimony about the severity of her symptoms, the ALJ must give "specific, clear and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1029, 1036 (9th Cir. 2007)).

In this case, the ALJ applied the requisite two-step framework and cited specific, clear, and convincing reasons for discounting portions of Plaintiff's subjective symptom testimony. First, The ALJ determined that Plaintiff's testimony regarding her vision was not supported by the objective evidence of record. Tr. 19. Lack of objective evidence is a valid, clear-and-convincing rationale for finding a plaintiff's testimony not fully credible. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). When asked why she was unable to perform work involving primarily sitting with the ability to change positions as needed, Plaintiff testified she could not work due to poor vision, as well as diminished cognition and concentration. Tr. 19. The ALJ discounted Plaintiff's testimony regarding her vision impairment because "the medical evidence of record contains no objective evidence of vision impairment, nor were such allegations made to the claimant's medical providers." Tr. 19. Plaintiff points out that the medical records do show some complaints from Plaintiff of blurred vision. However, after review of the evidence, the Court agrees that the record lacks objective medical evidence of a severe vision impairment. At most, an eye exam revealed that Plaintiff had 20/25 vision in her left eye and her doctor made a note that her difference in vision from left to right eye and the use of single reading glasses "could worsen her headaches." Tr. 776. Based on this minor evidence of a vision impairment, it was reasonable for the ALJ to conclude that the medical evidence was inconsistent with Plaintiff's testimony that her vision would hinder her ability to work.

Second, the ALJ found that Plaintiff's daily activities contradicted her testimony regarding the limiting effects of her symptoms. An ALJ may use activities of daily living to discredit a claimant's testimony where the activities (1) meet the threshold for transferable work skills or (2) contradict the claimant's testimony. *Orn*, 495 F.3d at 639. The ALJ reasoned that Plaintiff "alleged that she performed no household chores or shopping due to fatigue. Yet, she

attended several support groups and went to the methadone clinic daily." Tr. 19. The ALJ

further explained later in the decision that although Plaintiff testified that she did not engage in

activities other than attending her medical appointments and support groups, the record shows

that she "prepares simple meals, washes laundry, cleans her bathroom, washes dishes, dusts,

reads, shops, manages her finances, goes for walks, hikes, exercises, goes out for coffee, attends

church, and cares for her grandchildren. At times, she also cared for her pets and her teenage

children, and she attended college courses." Tr. 22. Plaintiff should not be penalized for

funneling the majority of her energy into maintaining her sobriety. However, it was reasonable

for the ALJ to consider these daily activities in combination with other evidence in the record

and conclude that such activities undermine or contradict Plaintiff's assertions related to the

intensity, persistency, and limiting effects of her symptoms.

Third, the ALJ noted inconsistencies between Plaintiff's testimony and the medical

records regarding Plaintiff's history of headaches. Tr. 19-20. The ALJ stated that Plaintiff

"alleged an 8-year history of headaches, but admitted her symptoms were adequately treated with

two Tylenol a day." Tr. 19-20. The ALJ further reasoned,

> At the May 2017 hearing, the claimant continued to report an eight-year history of
> headaches. However, contrary to her testimony in November 2016, she now alleged
> that her headaches rendered her bedridden for three to four days at a time before
> they resolved. When asked when her headaches had worsened, the claimant alleged
> that her headaches have always been severe and rendered her bedridden. When
> asked about the discrepancy between her earlier testimony, she explained there
> must have been a "misunderstanding" at the earlier hearing. However, the
> November 2016 hearing record shows no such misunderstanding. Nor are the
> claimant's allegations at the May 2017 hearing supported by the medical evidence
> of record. Rather, the medical evidence shows no mention of headaches until 2015,
> and even then, her headaches are rarely mentioned. At the hearing, the claimant
> also alleged that her headache medication provided only an hour of relief from her
> headaches. However, this is also inconsistent with her contemporaneous treatment
> notes showing that her headaches are effectively managed with medication (Ex.
> 21F/1 ).

Tr. 20.

Plaintiff argues that the ALJ misinterpreted and misstated the record here. Plaintiff argues that she did not testify at the November 2016 hearing that her symptoms were adequately controlled with two Tylenol a day, and explains that she instead testified that her headaches were "really bad" and she had taken Advil for her headaches in the past (implying that the Advil had at least helped to some degree), but she was no longer able to take such medication because of her liver condition. Tr. 69-70. Therefore, she was limited to taking two Tylenol for her headaches. Moreover, Plaintiff points out that she reported morning headaches to Dr. Kelley while obtaining treatment from him in 2011 and 2012 (Tr. 391, 402), and a record from 2014 shows that Dr. Khaleeq noted a past medical history of headaches (Tr. 476). Accordingly, the ALJ's underlying finding that Ulbricht did not report headaches until 2015 is not supported by substantial evidence. However, the Court finds harmless error here. The ALJ was ultimately correct that Plaintiff takes two Tylenol a day as her treatment for headaches. Plaintiff points to no other method of treatment for headaches. The medical records cited by Plaintiff regarding her headaches prior to 2015 are brief, and the records after 2015 do not support Plaintiff's testimony that her headaches rendered her bedridden on such a frequent basis that she could not work. The example cited by Plaintiff from 2016 reveals that her headaches were described as "dull." Tr. 568. The doctor opined that her headaches could be caused by her Zoloft medication and recommended that she reduce the strength of her medication and undergo an eye exam. *Id.* Another example cited by Plaintiff from 2015 to support her history of headaches reveals that her headaches seemed to be connected to other symptoms that indicate a viral or bacterial infection. Tr. 620. The record states that Plaintiff was seen for chest congestion, sore throat, cough, sweating, sinus congestion, and "over the past 2 days she has started to develop a severe

headache and neck pain and stiffness." *Id.* Other records cited by Plaintiff do mention a history

of headaches, but are consistent with the ALJ's statements that the headaches are rarely

mentioned and seem to be treated by medication. Tr. 402, 476, 520, 778. The Court finds no

harmful error here.

Fourth, the ALJ noted discrepancies between the medical evidence and Plaintiff's alleged

onset date. The ALJ stated,

> "There is no evidence of any significant exacerbation in her medical or mental
> health conditions that would support her assertion that she quit [working in 2008]
> for medical reasons. In fact, there are no medical records even remotely close to the
> claimant's alleged onset date. Rather, the most proximal records are from almost
> three years later in August 2011 when the claimant sought treatment due to a history
> of hepatitis C dating back to 1997 (Ex. 3F/23). Notably, the fact the claimant's
> allegedly disabling hepatitis was present at approximately the same level of severity
> prior to the alleged onset date and did not prevent her from working or raising her
> four children suggests those impairments would not currently prevent work."

Tr. 20. Plaintiff disputes this finding by arguing that her health turned much worse in 2008 when

she was diagnosed with pancreatitis. However, Plaintiff did not point to any medical records

from 2008 that show what symptoms or limitations corresponded with her pancreatitis diagnosis.

Plaintiff then explains that three years later, she underwent a liver biopsy, which revealed that

her chronic hepatitis C was resulting in moderate to severe activity and early cirrhosis. Plaintiff

further explains that "it is not the hepatitis itself that matters so much to [Plaintiff]'s health as it

is the resulting liver damage from the chronic hepatitis." Pltf. Br. at 16 (#20). This explanation

seems to confirm the ALJ's conclusion that her most proximal records regarding her hepatitis C

are from 2011, three years after her alleged onset date. Therefore, Plaintiff has failed to explain

how the ALJ erred in making this finding.

Finally, the ALJ cited Plaintiff's history of purportedly "conservative and routine"

treatment to discount the intensity, persistence, and limiting effects of Plaintiff's symptoms and

conditions. Allegations of severe pain may be impugned if a claimant requires non-prescription medications to alleviate symptoms, or receives relief from minimal treatment. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008). The ALJ stated,

> Notably, the record reveals she received only conservative and routine treatment. There were periods during which her medications were refilled without change, and there is no evidence of significant medication side effects. Moreover, the medical records reveal that her various treatment modalities have been relatively effective in resolving her hepatitis C and controlling her symptoms of neck pain and headaches. Additionally, the claimant was never hospitalized for any significant period, and her impairments have not received or required more aggressive forms of treatment, such as surgery. This level of treatment suggests the claimant's impairments do not result in significant functional limitation that preclude her from engaging in basic work activity.

Tr. 21-22. Plaintiff disputes this finding and argues that the treatment she received for her hepatitis C condition—particularly her first course of triple therapy with boceprevir, pegylated interferon and ribavirin—is hardly conservative and routine treatment. She claims that she went through these therapies only because it was crucial to her long-term health and halting the liver damage. However, there is nothing in the record that allows the Court to conclude what is considered "routine treatment" for hepatitis C. Moreover, Plaintiff concedes that the most current medical evidence indicates that Plaintiff's hepatitis C has resolved. Therefore, the ALJ's conclusion that "her various treatment modalities have been relatively effective in resolving her hepatitis C" appears to be accurate.

Considering all of these reasons provided by the ALJ for why she discounted Plaintiff's symptom testimony, the Court concludes that the ALJ provided clear and convincing reasons supported by the record to conclude that Plaintiff's symptoms were not as limiting as alleged. Accordingly, the Court affirms.

**ORDER**

Based on the foregoing, the decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

DATED this 17th day of June, 2020.


/s/ Mark D. Clarke
MARK D. CLARKE
United States Magistrate Judge